U.S. COURTS

JUL 1 0 2012

Rcvd_____ Filed_____ Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JAMES M. PETERS, WASHINGTON STATE BAR NO. 7295
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO  83712-9903
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| vs. | ) | **RULE 11 PLEA AGREEMENT** |
| | ) | |
| MICHAEL JAMES ANGUS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Rev. April 2011 (General)

## I. GUILTY PLEA

A. **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), defendant, the attorney for the defendant, and the Government[1] agree that the defendant will waive his right to indictment and plead guilty to Count One of the Information, which charges the defendant with Possession and Accessing with Intent to View Sexually Explicit Images of Minors, in violation of 18 U.S.C. Section 2252(a)(4)(B). As consideration for the defendant's plea of guilty, the Government agrees not to charge the defendant with any other violations of law related to the course of conduct described herein currently known to the Government.

**Forfeiture Allegation:** In connection with the violation set out above, the defendant agrees to forfeiture of the property referred to in the Forfeiture count of the Information.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government and the Defendant agree to recommend a statutory maximum sentence of 120 months incarceration, reduced by the amount of time the defendant has spent in custody related to this investigation, to be followed by lifetime Supervised Release.

B. **Oath.** The defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

**Plea Agreement** -1- Rev. April 2011 (General)

## II.   WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, waives the following rights: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant.  If the District Court accepts the defendant's guilty plea, there will be no trial.

## III.   NATURE OF THE CHARGES

A.   **Elements of the Crime.** The elements of the crime of Possession of Sexually Explicit Images of Minors, as charged in Count One are:

> First, the defendant knowingly possessed and/or accessed with intent to view matter that the defendant knew contained visual depictions of minors engaged in sexually explicit conduct;
>
> Second, the defendant knew the visual depictions showed minors engaged in sexually explicit conduct;
>
> Third, the defendant knew that production of such visual depictions involved use of minors in sexually explicit conduct; and
>
> Fourth, that the visual depictions had been produced using material that had been mailed, shipped, or transported in interstate or foreign commerce.

B.   **Factual Basis.** If this matter were to proceed to trial, the Government and the

**Plea Agreement**                              -2-                              Rev. April 2011 (General)

defendant agree that the following facts would be proven beyond a reasonable doubt:

On November 8, 2011, Ada County Sheriff's detectives affiliated with the Idaho Internet Crimes Against Children task force began a lewd conduct investigation involving the defendant, Michael James Angus, date of birth July 24, 1944, after a 10-year-old female, "GH," revealed that Angus had touched her sexually at his home in Star, Idaho the evening of October 30, 2011. In summary, she reported that Angus had slid his hand inside her panties and rubbed her on top of her genitals. "GH"'s parents expressed concern for another young girl, named "LG," who often spent time alone with Angus at his home because they had observed that they were always touching one another and he seemed absorbed with her.

Investigators identified "LG," who was 8-years of age, and contacted her on November 17, 2011. "LG" said that she sometimes slept over at Angus' home. "LG" said that Angus taught her things she does not know, including how to use a camera. She stated that Angus is teaching her how to wash her body, and sometimes he washes her, watches her take a bath and helps her get dressed. "LG" stated that Angus feels her "tushy," which she said is her bottom, and tells her it feels "smooth." She said Angus had told her he is cute and that he loves her. "LG" also said Angus took pictures of her dancing, posing, and that he has taken pictures of her when she is in the bathtub.

Ada County deputies obtained a warrant to search Angus' home on November 18, 2011. Among the items seized was a black Samsung digital camera, found in Angus's pant pocket. The camera bore a label saying that it was "Made in Korea." They found a Kingston SD card within the camera with a manufacturer's trade label, "Made in Taiwan." They also seized a HP laptop computer, serial number CNF8223B14, which they found on the desk in Angus's home office. A

**Plea Agreement**                                        -3-

Hitachi hard drive, serial number 080424DP0C10DSGKEANP, bearing a manufacturer's label showing that it was a "Product of China," was found in the HP computer.

The hard drive contained 191 images of "LG" in a thumbcache_256.db directory file.[2] The images had date stamps visible on them, including July 17, 2009, March 25, 2011, May 6, 2011, July 13, 2011 and September 23, 2011. "LG" was depicted nude in most of these images and the setting was mostly in or around a bathtub in the master bathroom of Angus' home. Some of these images focused on "LG"'s genital area. For example, one image shows "LG" standing naked in a closet with her legs spread and her hands on her thighs. The date 09-23-2011 is stamped on the image. Another image depicts "LG" lying on her back in the water in the bathtub. The picture is focused on her genital and anal area through the water. The date 07-13-2011 is stamped on the side of the image. Another image is a close-up of "LG"'s genital, with the date 09-23-2011 is stamped on the image.[3]

Six original size images of "LG" were also found on this hard drive. Imbedded EXIF data[4] on one of these images contained information identifying the camera used to take the image

---

[2] One explanation for finding these images in the thumbcache_256.db directory was that the computer user viewed and/or accessed the images on this computer from a removable device, such as a thumb drive or external hard drive.

[3] Investigators were able to access Angus' Outlook appointment calendar and located files that corresponded to the dates May 6, July 13, and September 23, 2011, which correspond to the pornographic image files of "LG" time stamped with these dates, and confirmed that "LG" was scheduled to be with Angus on those dates.

[4] EXIF is short for Exchangeable Image File, a format that is a standard for storing interchange information in digital photography image files using JPEG compression. Almost all new digital cameras use the EXIF annotation, storing information on the image such as shutter speed, exposure compensation, F number, what metering system was used, if a flash was used, ISO number, date and time the image was taken, white balance, auxiliary lenses that were used and resolution.

as a Samsung digital camera, model VLUUL77. This is the same make and model that investigators seized from Angus on November 18. One of these images shows "LG" lying back in a bathtub with her genital area raised out of the water. The date 09-23-2011 is stamped on the side of the image. Several hundred other images of unidentified but appropriately clothed young girls, many of them prepubescent, were also found on the hard drive and contain EXIF data showing they were taken with the same model Samsung camera.

The same hard drive from the HP computer that contained the images of "LG" also contained 954 images of other, unidentified minors, of which approximately sixty-six images depict the lascivious exhibition of the genital or pubic area of a minor.[5] Some of these sixty-six images had URLs imbedded on them containing words such as "lolas" or "Lolita." These terms are often connected with child pornography photos distributed via the internet. For example, one image shows two young, naked girls on a beach; they appear to be about 10-14 years old. One girl is on top of and straddling the other girl, who is lying on her back beneath her. The URL LOLITAGIRLS.WS is printed at the bottom of the photo. Another image depicts a nude female, about 12-15 years of age, lying on her back facing the camera. She is fondling her vagina with her hand. The URL www.lolas.nm.ru is printed at the top of the picture. The remaining images include naturist (or nudist) images of children; many would be considered "child erotica" to a person with a sexual interest in children. Most of them depict nude children, mostly girls, age 2-17 years, along with nude adults in various outdoor settings.

---

[5] The parties agree these sixty-six images fit most of the factors described in *United States v. Dost*, 636 F. Supp. 828 (S.D.C.A. 1986).

**Plea Agreement**                    -5-                    Rev. April 2011 (General)

A computer forensic examiner at the FBI's Regional Computer Forensic Laboratory located a registry of removable devices that had been introduced to this computer. They include Kingson and Lexar flashdrives/jumpdrives, a one terabyte external hard drive and other unidentified thumb drives. These devices were not found during the search of Angus's home on November 18th.

On February 21, 2012, investigators learned that "LG" had made additional disclosures to a therapist regarding sexual contact with Angus. In summary, she described acts with Angus that were consistent with masturbation. She said she saw Angus's penis and disclosed "she got to see his juices." She also reported that Angus would rub her vagina and said that he was trying to have her go to her "sweet spot." She said that Angus told her that it was their secret, and she was not to tell anyone. She also stated that when she would go to Angus's house, he would tell her that he had "surprises for her." When asked why she had not told anyone about this before, she said it was because Angus would have to go to jail for a long time if she did. A follow-up interview by a forensic interviewer at the St. Luke's Medical Center CARES Unit on March 2, 2012 resulted in "LG" disclosing additional detail, including that Angus engaged in sexual contact with her that involved masturbation on multiple occasions at Angus's home. She also confirmed that Angus had taken pictures of her naked.

On May 29, 2012, and again on June 5, 2012, Angus met with investigators at the Ada County Sheriff's Office, accompanied by his attorney. Before the meeting, Angus signed a proffer letter agreeing, among other things, ". . . that the court may consider any statements he makes during this proffer to form a part of the basis for a sentence of 120 months, plus lifetime supervised release, following a plea of guilty to possession of sexually explicit images of minors,

**Plea Agreement**                               -6-                        Rev. April 2011 (General)

as contemplated in ongoing negotiations with the County and the United States." In summary, during the proffer the defendant admitted the following:

1.      Concerning the incident with "GH" on October 30, 2011, Angus said he was rubbing her back outside her clothes. At some point, he thought she was going to fall asleep and he put his hand under her clothes and rubbed her back, her side, and her stomach, and then he spread his fingers apart and one of his fingers touched the point of her vaginal area;

2.      Regarding "LG," Angus recalled taking pornographic photos of her on four or five occasions, including images of her genital area, using the camera the investigators seized during the search in November;

3.      Angus admitted that he masturbated to ejaculation in front of "LG" twice; that she touched his penis at least once, and he touched her nude genital area with his finger. He said he told her that she would get a "heightened feeling" and she told him it felt good;

4.      Angus stated that his mouth touched "LG's" nude genital area once, on a separate incident from when he was masturbating with her. He said his penis touched the outside of her vagina one time, and her "butt cheek" one time, but there was no penetration;

5.      Angus admitted rubbing "LG"'s "clitoral area" over her clothes, and to using a back massager on the same part of her body, and briefly touching her genitals, skin-to skin, under her clothes, among other behaviors;

6.      Angus admitted inappropriate touching with another relative, a 10-year-old female named "KD." He admitted that he intentionally ran his hand up and over her genital area, and

that he rubbed her "clitoral" area over her pants for one or two minutes on two occasions the same day;

7.     Angus recalled another child whose name he could not recall whom he touched inappropriately. He said it happened at church. He explained that kids used to come up and hug him because he paid so much attention to them and while hugging one girl he dropped down her back and "brushed her fanny."

8.     He admitted that he found the child pornography and erotica that investigators recovered from his computer, using the website www.enature.net. He said he would click on pictures that would take him to other links. He said he would find images he liked and save them to his computer and to a thumb drive. Angus said he destroyed the thumb drive by flushing it down the toilet and used the software program "Destroy It' to shred the images from his computer. He did this with knowledge that "GH" had made a disclosure to her parents that he had inappropriate contact with her.

9.     Angus disclosed incidents with two additional girls, "HB" and "GB," who are currently ages eleven and nine years. They are the children of family friends. He admitted touched the crotch of one girl while playing with her. On another occasion, he said his hands possibly could have brushed across the older girl's "boobs," under her shirt, while they were playing.

10.     Angus said there might have been two other occasions at church where inappropriate touching happened. He could not recall the girl's name.

## IV.    SENTENCING FACTORS

A.    **Maximum Penalties.** A violation of 18 U.S.C. 2252(a)(4)(B), as charged in Count One, is punishable by a term of imprisonment of up to 10 years, a term of supervised release of at least 5 years up to life, a maximum fine of $250,000, and a special assessment of $100.

B.    **Supervised Release.** Following release from prison, the defendant must be placed on supervised release for at least 5 years, up to life.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

C.    **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

D.    **Special Assessment.** The defendant will pay the special assessment of $100 before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

E.    **Restitution.** In addition to any fine or costs imposed, the Court pursuant to 18 U.S.C. §§ 2259, shall order the defendant to pay restitution equal to the loss caused to any victim of the offense charged in the Information.

**Plea Agreement**                    -9-                    Rev. April 2011 (General)

**F.**    **Forfeiture.**

The defendant understands that the Court will, upon acceptance of guilty plea, enter an order of forfeiture as part of sentence, and that the order of forfeiture may include assets directly traceable to the offense, assets used in the commission of the offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the defendant agrees to immediately forfeit to the United States the property set out in the Forfeiture Allegations of the Information.

**Waiver of Further Challenge or Review of Forfeiture.**

The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

**Court Shall Retain Jurisdiction.**

The defendant agrees to forfeit the properties as stated above, or to substitute properties of equal value, at the Government's option. The United States District Court for the District of Idaho shall retain jurisdiction to settle any disputes arising from application of the foregoing forfeiture provisions.

## V.    UNITED STATES SENTENCING GUIDELINES

A.    **Application of Sentencing Guidelines.**  The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553.  The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement.  The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range.  The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines.  While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

B.    **Sentencing Guidelines Recommendations and Requests.**

1.    **Acceptance of Responsibility.**  If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a).  The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  If, before sentence is imposed, the

**Plea Agreement** Rev. April 2011 (General)

defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2.    **Joint Recommendations.**  The parties jointly make the following recommendations, and agree that the following shall be included as terms of the defendant's sentence, expressly bargained for as a part of this plea agreement:

a)    **Psycho-Sexual Assessment** --The defendant will submit to a  sex offender evaluation pursuant to Title 18, United States Code, Section 3552(b) prior to sentencing in this case.  It is the defendant's obligation to secure this evaluation from a mental health professional certified by the Idaho Sex Offender Classification Board (see, http://www2.state.id.us/socb/). The evaluation shall follow the format for psycho sexual evaluations set forth by the Idaho Sex Offender Classification Board and the Practice Standards and Guidelines for Members of the Association for the Treatment of Sexual Abusers (ATSA).  The defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

b)    **Waiver of Confidentiality** -- The defendant agrees to waive any right to confidentiality and allow the provider conducting the psycho-sexual evaluation (and any subsequent treatment) to supply a written report(s) to the United States Probation Department, the Court and the United States Attorney.

c)    **Contact with Minors** -- The Defendant may not have direct or indirect contact with children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

**Plea Agreement**                                 -12-                    Rev. April 2011 (General)

d)      **Access to Minors** -- The Defendant will not reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by children under the age of eighteen.

e)      **Occupational Restriction** – The defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

f)      **Restriction on Computer/Internet Use** -- The Defendant may not possess or use a computer or other electronic device connected to the Internet without the prior permission, in writing, from his probation officer.

g)      **Possession of Sexually Explicit Matter Involving Minors** -- The Defendant will not possess any child pornography or obscenity, or sexually explicit visual or text (written) material involving minors.

h)      **Polygraph Testing** -- The Defendant agrees to participate in polygraph testing to monitor his compliance with supervised release and treatment conditions, at the direction of his probation officer and/or treatment staff.

i)      **Post-Incarceration Treatment** -- The Defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the direction of a qualified mental health professional who is experienced in treating and managing sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers (ATSA). The defendant will follow the rules of the treatment program as if they are the orders of the Court.

j)      **Search Provision** -- The Defendant will be subject to a search of his person, home or vehicle, and any objects or materials (including computers and other types of electronic storage media) found therein, at the discretion of his probation officer.

k)      **Sex Offender Registration/Megan's Law/Adam Walsh Act Provision** - - The defendant has been advised, understands and agrees that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that federal law requires that he must update his registrations not later than <u>three</u> business days after any change of name, residence, employment, or student status.  See 42 U.S.C. § 16913(c).  State laws may be more restrictive.

The defendant has been advised and understands that Idaho law requires that such registration be updated with the sheriff of the county within <u>two</u> working days of coming into any county to establish permanent or temporary residence, commencement of employment or enrollment as a student in an educational institution, and provides that nonresidents employed in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, must register prior to the commencement of such employment with the sheriff of the county.  See I.C. 18-8307 (4)(a)(b). The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under

**Plea Agreement**                          -14-                          Rev. April 2011 (General)

federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both, and may also subject the defendant to prosecution under state failure to register laws.

1)    **Conditional Use/Derivative Use Immunity** - As a condition of court-mandated evaluation and treatment, the defendant will be required truthfully to reveal his entire sexual history, including the possibility of other sexual crimes. In recognition of the fact that full disclosure of that history is a necessary component of effective treatment, the government agrees that the defendant's admissions during psycho-sexual evaluation and sex offender treatment, to sexual crimes (*excluding homicide*) previously undisclosed to any law enforcement entity, will not be used against the defendant in a new criminal prosecution. *See United States v. Antelope,* 395 F.3d 1128 (9th Cir. 2005), and *Kastigar v. United States,* 406 U.S. 441 (1972). However, the parties agree that this use immunity and derivative use immunity, is expressly conditioned, upon: 1) the defendant successfully completing sexual deviancy treatment, and 2) the defendant not materially violating the rules of supervised release, and/or committing a sexual crime or a crime involving the sexual exploitation of children after the date of this agreement. If the defendant fails to complete all aspects of treatment, or fails to comply with all material supervised release requirements, or reoffends as described above, then this immunity agreement is rescinded and the government may use defendant's statements against him.

3.    **Stipulation Regarding Sentencing Guidelines.** The defendant understands that the United States Sentencing Guidelines apply in an advisory manner and are not binding on the Court. In exchange for the concessions made by the government, including its agreement to charge the defendant with possession/access with intent to view sexually explicit images of minors, rather than one or more counts of production and/or receiving sexually explicit images of

**Plea Agreement**                                     -15-                          <span>Rev. April 2011 (General)</span>

minors, the defendant agrees to recommend a sentence at the statutory maximum, which is 120 months, plus lifetime supervised release, and agrees to all the other terms and conditions in this plea agreement.

The parties agree that the applicable Sentencing Guideline is USSG § 2G2.2. The base offense level is 18. That is increased by 2-levels under §§ (b)(2) because the offense involved prepubescent victims; by 5-levels under §§ (b)(5) because the defendant had engaged in a pattern of activity involving the sexual abuse of minors; by 2-levels under §§ (b)(6) because the defendant used a computer to commit the offense; and by 2-levels under §§ (b)(7) because the Government can prove the defendant possessed and/or accessed with intent to view more than 10 but fewer than 150 images.

In addition, the parties agree that the defendant obstructed the investigation by destroying evidence after he was aware that the victim known as "GH" had reported inappropriate conduct by him, and that materially hindered the investigation, which increases the offense level by 2-levels under § 3C1.1.

Finally, the parties agree that a 4-level upward departure under Application Note # 7 is appropriate because the §§ (b)(5) enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation, namely, the defendant has engaged in hands-on sexual contact with multiple prepubescent minors and he has produced sexually explicit images of one prepubescent minor. As such, assuming the Court credits the defendant with acceptance of responsibility, his Total Offense Level is 32. Assuming the defendant's Criminal History is Category I, the resulting sentencing range is 121-151 months (capped by statute at 120 months).

## VI.   WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

A.     In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.     Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

1.     the sentence imposed by the District Court exceeds the statutory maximum;

2.     the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3.     the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

**Plea Agreement**                              -17-                        Rev. April 2011 (General)

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1, or an upward departure under § 5K2.0, and relieve the Government of the obligations in this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.

## VIII.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## IX.   CONSEQUENCES OF VIOLATING AGREEMENT

A.   **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government

**Plea Agreement**                    -18-                    Rev. April 2011 (General)

determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

      **B.**     **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

**X.**    **MISCELLANEOUS**

      **A.**     **No Other Terms.** This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant. This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho. The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

B.   **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than **5:00 p.m. on July 1, 2012**.

## XI.   UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

<u>James M. Peters</u>                  <u>7-6-12</u>
James M. Peters                              Date
Assistant United States Attorney

## XII.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand the Agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

**Plea Agreement**                    -20-                    Rev. April 2011 (General)

_____                    _____
Michael James Angus                                Date
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with

my client.  The Plea Agreement accurately sets forth the entirety of the Agreement.  I concur in

my client's decision to plead guilty as set forth above.

_____                    _____
Gerald Bublitz                                     Date
Attorney for the Defendant